**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DIMITRIOS VOUTHAS and JACKLYN K. VOUTHAS, | |
| Plaintiffs, | Civ. No. 17-1038 |
| v. | **OPINION** |
| VERIZON COMMUNICATIONS, INC. a/k/a VERIZON NEW JERSEY, INC., CHRISTOPHER BARKER, CHRISTOPHER MROZ, and JASMINE PIERCE, | |
| Defendants. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendants Verizon Communications, Inc. ("Verizon"), Christopher Barker, Christopher Mroz,[1] and Jasmine Pierce (collectively, "Defendants"). (ECF No. 31.) Plaintiff Dimitrios Vouthas ("Plaintiff") opposes. (ECF No. 35.) The Court has decided the Motion on the written submissions of the parties, pursuant to Local Rule 78.1(b). For the reasons stated herein, the Motion is granted.

## BACKGROUND

This case concerns allegations of workplace discrimination. Plaintiff has worked for Defendant Verizon since 1995. (Defs.' Stmt. of Undisputed Material Facts ("SOUMF") ¶ 1, ECF

---

[1] Defendant Mroz is pled improperly as "Morz." (*See* Notice of Remv'l at 2, ECF No. 1.)

No. 31-7.) Defendants barker, Mroz, and Pierce, are all employees of Defendant Verizon. Plaintiff had a stroke in January 2016 that affected his memory and his ability to find the right words in conversation. (Vouthas Dep. 62:13–25, ECF No. 31-4.) Before the stroke, Plaintiff had a history of generalized anxiety disorder and permanent psychiatric impairment. (Pl.'s Counter SOUMF ("CSMOUF") ¶ 4, ECF No. 35-1.)

Plaintiff began working in the Westwood Garage as a Facilities Technician in 2014. (SOUMF ¶ 4.) Defendant Barker began working in the Westwood Garage in April 2015. (*Id.* ¶ 6.) That same month, Plaintiff complained to Human Resources about Defendant Barker. (*Id.* ¶ 7; Pl.'s Reply to SOUMF ("RSOUMF") ¶ 7, ECF No. 35-2.)[2] Also that month, Plaintiff claims that he attended a Quality Assurance Review ("QAR") concerning an alleged violation of work rules; Defendant Barker was present at the QAR. (CSOUMF ¶ 15.) During the QAR, Plaintiff had a panic attack and left the room. (*Id.* ¶ 18.) Defendant Barker followed him out of the room, and at this point Plaintiff told Defendant Barker about his medical condition, which included panic attacks and anxiety. (*Id.* ¶¶ 18–19.) Additionally, according to Plaintiff, on April 13, 2015 Defendant Barker "attempted to purposefully collide with [Plaintiff] while they were walking in the garage." (*Id.* ¶ 25.)

Defendant Barker became Plaintiff's direct supervisor in January 2016. (SOUMF ¶ 8.) On January 11, 2016, Plaintiff was installing wire for a customer, and performing the job as the customer requested would take a substantial amount of time. (Vouthas Dep. 200:9–16, 202:9–10.) Plaintiff performed the work as the customer requested, but stated that he needed another

---

[2] The parties dispute the reasons for Plaintiff's complaint to Human Resources. Defendants claim that Plaintiff complained about Defendant Barker's "management style." (SOUMF ¶ 7.) Plaintiff claims the complaint arose because Defendant Barker locked employees out of the training and break room. (RSOUMF ¶ 7.)

person to help to avoid running late on the project. (*Id.* 200:9–10, 200:22–201:3, 201:11–13.)
Defendant Barker did not send help but claims that he alleviated Plaintiff's schedule by having
another employee cover Plaintiff's next job. (*Id.* 201:13–17.) Towards the end of the day,
Defendant Barker called and texted Plaintiff several times to ask why the work was not done. (*Id.*
201:18–202:6.) According to Plaintiff, these inquiries were wholly unnecessary and "only served
to interrupt and delay [Plaintiff]." (RSOUMF ¶ 60; *see also* CSOUMF ¶ 36.) Defendant Barker
served as Plaintiff's supervisor for approximately two weeks in total. (SOUMF ¶ 46.)[3] Defendant
Barker visited Plaintiff in the field one time during that two-week period. (*Id.* ¶ 58.)

Defendant Mroz became Plaintiff's supervisor on June 2, 2016. (*Id.* ¶ 15.) On June 14,
2016, Plaintiff attended a QAR concerning Plaintiff's use of a specific time code on his
timesheet. Plaintiff used a time code that had been acceptable in the past but was no longer so.
(Vouthas Dep. 179:7–25.) Use of the wrong time code warrants discipline, but Plaintiff received
no discipline. (SOUMF ¶ 19.)

In another incident, Plaintiff correctly completed a job at a customer's house, but the
computer system erroneously reported that Plaintiff had failed to take a necessary step in
performing the job. (Vouthas Dep. 135:9–21.) Defendant Mroz approached Plaintiff about the
apparent problem before it was discovered that Plaintiff had performed the job correctly. (*Id.*
136:19–137:2.) Plaintiff received a letter of reprimand, which did not affect his hours or pay. (*Id.*
137:3–11.)

---

[3] As stated above, Defendant Barker became Plaintiff's supervisor in January 2016. From
January 12 to April 11, 2016, Plaintiff took a leave of absence after he suffered a stroke.
(SOUMF ¶¶ 10–12.) From April 13 to around June 1, 2016, Plaintiff went on strike with the
employees' union. (*Id.* ¶¶ 13–14.) On June 2, 2016, Defendant Barker was transferred to a
different garage and ceased to be Plaintiff's supervisor. (*Id.* ¶ 15.)

In late June or early July of 2016, Plaintiff received a one-day suspension for failing to run an Ethernet cable. (*Id.* 294:23–295:3.) However, Plaintiff later received backpay for that day. (*Id.* 295:4–9.)

Plaintiff filed grievances concerning Mroz's management style and stated that he wished to have "a more understanding supervisor." (SOUMF ¶¶ 51–54.)

On August 4, 2016, Plaintiff submitted a letter from his therapist requesting light duty and accommodations in the form of "change in tone of voice, allowing [Plaintiff] to speak without interruption, limiting the number of intrusions while on assignment, communicating in a non-confrontational, punitive or interrogatory manner, et cetera." (*Id.* ¶ 24; Vouthas Dep. 150:18–25.) Plaintiff was then assigned to a light duty position in South Plainfield, New Jersey. (SOUMF ¶ 25.) Defendants claim that this assignment was consistent with Defendant Verizon's policies and provided an appropriate accommodation for Plaintiff's temporary inability to perform the essential functions of his job. (*Id.* ¶ 25; Vouthas Dep. 160:13–17.) However, Plaintiff claims that he could have been sent to a closer location than South Plainfield and that he was sent to South Plainfield because Defendants mistakenly believed he needed physical rather than mental and emotional accommodations. (Vouthas Dep. 150:18–151:1; 151:22–152:9.) The South Plainfield site required a longer commute, so Plaintiff's hours were adjusted and he received pay for part of his commute. (SOUMF ¶ 28.) Plaintiff was on light duty from August 15 to September 1, 2016. (SOUMF ¶¶ 27, 32.) Neither Defendant Barker nor Defendant Mroz supervised him during this period. (Vouthas Dep. 152:13–153:5.)

On September 3, 2016, Defendant Mroz was transferred to Dover, New Jersey and was no longer Plaintiff's supervisor. (SOUMF ¶ 34.) Defendant Mroz therefore supervised Plaintiff for approximately two months in total. (*Id.* ¶ 47.) Defendant Mroz visited Plaintiff in the field

4

once a week during this period. (*Id.* ¶ 59.)

Defendants Barker and Mroz increased the use of QARs for all employees. (*Id.* ¶ 63.) According to Plaintiff, Defendant Barker raised his voice, issued write-ups and——"weaponized the work rules" with all employees. (*Id.* ¶¶ 64–67.) Defendant Mroz treated employees equally in his "micromanagement" and "verbal[] abuse" in "relentless" phone calls. (*Id.* ¶¶ 68, 70.) Plaintiff's co-workers also complained about verbal abuse from Defendant Mroz. (*Id.* ¶ 69; RSMOUF ¶ 69.) Defendant Mroz had also disciplined other technicians who showed performance issues similar to Plaintiff. (Mroz Dep. 59:8–13, ECF No. 35-11.) According to Plaintiff, Defendants "focused on him" because he had spoken up for what he saw as "unfair and unright" behavior. (SOUMF ¶ 75.)[4]

Defendant Pierce was the supervisor of Defendants Barker and Mroz from late 2015 to December 2017. (Pierce Dep. 14:15–19, 14:23–15:1, ECF No. 35-12.) According to Plaintiff, Defendant Pierce allowed Defendants Barker and Mroz "lots of room and freedom in the way they would conduct themselves." (SOUMF ¶ 76a.) Defendant Pierce refused to provide Plaintiff with a new supervisor when he complained about Defendant Mroz. (*Id.* ¶ 76c.) She claims that she instructed Defendant Mroz to stop calling Plaintiff, and therefore believed that she had addressed Plaintiff's complaint without needing to move personnel. (Pierce Dep. 43:12–44:7.) Defendant Pierce also allegedly did not provide Plaintiff with accommodations he requested by letter. (SOUMF ¶ 78; RSOUMF ¶ 78.) Which accommodations Plaintiff requested in this instance—other than placement with a different supervisor—are not clear. (*See* Vouthas Dep.

---

[4] Plaintiff also claims that "Defendant Mroz put him on a performance plan so he 'could give him extra attention.'" (Pl.'s Br. at 6, ECF No. 35.) Plaintiff, however, cites to portions of Plaintiff's deposition (187:12–188:2) that have not been presented to the Court by any party.

5

276:21–277:1 ("Again, everything that I had submitted, meaning once they were aware of my condition, she made absolutely zero effort to accommodate me. I have a disability. I would hand in paperwork saying I have a disability. And there was always a refusal to even recognize that I had a disability.").)

On one occasion Defendant Pierce ordered Plaintiff to go back into the field while he was working on a charity fundraiser. (*Id.* ¶ 76d.) She claimed that Plaintiff was needed because "the workload was too heavy," but Plaintiff claims that Defendant Pierce was attempting to prevent Plaintiff from speaking to a company vice president. (*Id.*)[5]

The Complaint in this case was filed on January 6, 2017 in the Superior Court of New Jersey, Monmouth County, Law Division, and removed to this Court on February 15, 2017. (*See* Notice Remv'l ¶ 1.) The parties have agreed to dismiss various Counts in this case, and only two Counts remain: (1) hostile work environment under the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. § 10:5-12(a); and (2) retaliation in violation of the NJLAD, § 10:5-

---

[5] On another occasion, Defendant Pierce sent Defendant Mroz to a customer site where Plaintiff was working and, according to Plaintiff, later asked a union delegate named Andy Newman why Plaintiff did not have a panic attack as a result. (Vouthas Dep. 228:11–230:18.) From this evidence, Plaintiff alleges that Defendant Pierce attempted to force Plaintiff to have a panic attack by sending Defendant Mroz to the work site. (*Id.*) The statement that Defendant Pierce allegedly made is double hearsay, because Plaintiff stated in his deposition that Defendant Pierce made the statement to union delegate Andy Newman, who in turn reported the statement to Plaintiff. *See* Fed. R. Evid. 805. Because the Court will not, on a motion for summary judgment, consider evidence that would be inadmissible at trial, Defendant Pierce's alleged statement cannot be considered. Fed. R. Civ. P. 56(c)(2); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (3d Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."); *see Mincy v. Klem*, 448 F. App'x 169, 172 n.2 (3d Cir. 2011) (finding that a hearsay statement contained in the plaintiff's affidavit would not be admissible at trial); *Smith v. City of Allentown*, 589 F.3d 684, 693–94 (3d Cir. 2009) (finding that a hearsay statement allegedly reported to the plaintiff would be inadmissible where the person who allegedly provided the statement strenuously denied doing so at a deposition). *But see Barr v. Cty. of Clarion*, 417 F. App'x 178, 180 n.4 (3d Cir. 2011) (concluding that the contents of a hearsay letter could be admissible because the writer could testify to the contents at trial).

12(d). (Compl. ¶¶ 43–48, ECF No. 1-1; Stipulation & Order, ECF No. 28.)[6]

Defendants filed the present Motion for Summary Judgment on December 14, 2018. (ECF No. 31.) In accordance with the Court's Orders modifying the briefing schedule (ECF Nos. 34, 37), Plaintiff opposed on January 9, 2019 (ECF No. 35) and Defendant replied on January 16, 2019 (ECF No. 38). The Motion is presently before the Court.

## **LEGAL STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Consequently, "[s]ummary judgment is precluded if a disputed fact exists which might affect the outcome of the suit under the controlling substantive law." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir. 1993) (citing *Anderson*, 477 U.S. at 248).

In resolving a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits." *Curley v. Klem*,

---

[6] The parties stipulated that all claims brought by Plaintiff Jacklyn K. Vouthas (Plaintiff Dimitrios Vouthas's wife) would be dismissed (ECF No. 13), but the Court never ordered this. In the Order accompanying this Opinion, the Court will Order dismissal of all claims brought by Plaintiff Jacklyn K. Vouthas.

298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I. Summary Judgment Is Granted for Defendants on the NJLAD Hostile Environment Claim

The NJLAD provides that, "It shall be an unlawful employment practice . . . [f]or an employer, because of the . . . disability . . . of any individual . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . ." N.J.S.A. § 10:5-12(a). A hostile environment claim under this subsection requires a plaintiff to

> show that the complained-of conduct (1) would not have occurred but for the employee's protected status [in this case, disability], and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive.

*Shepherd v. Hunterdon Dev'l Ctr.*, 803 A.2d 611, 625 (N.J. 2002) (citing *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453 (1993)). Under the first prong . . . a plaintiff must show . . . that the impermissible conduct would not have occurred but for plaintiff's protected status," in this case Plaintiff's disability. *Id.; see also Lehmann*, 626 A.2d at 604 ("For example, if a supervisor is equally crude and vulgar to all employees, regardless of their sex, no basis exists for a sex

8

harassment claim. Although the supervisor may not be a nice person, he is not abusing a plaintiff because of her sex.").

In this case, a reasonable jury could not find in Plaintiff's favor on the first prong. Plaintiff has not shown that any of Defendants' objectionable conduct was directed at him because of his disability. Some aspects of the complained-of conduct were inflicted on all employees: Defendant Barker's yelling and "weaponiz[ation] of the work rules" (SOUMF ¶¶ 64, 67); Defendant Mroz's "micromanagement," excessive phone calls, and verbal abuse (*id.* ¶¶ 68, 70); and Defendants Barker and Mroz's increased use of QARs and disciplinary measures (*id.* ¶¶ 65–66; Mroz Dep. 59:8–13). In other instances, although the record does not affirmatively show that all employees were treated equally, it also provides no evidence to the contrary; no evidence has been presented to show that Defendant Barker intended to collide with Plaintiff or refused to send him assistance on a job because of Plaintiff's disability. Because the burden is on Plaintiff to present some evidence that a reasonable jury could accept to support his discrimination claim, *Celotex*, 477 U.S. at 322; *Shepherd*, 803 A.2d at 625 (internal citations omitted), and because Plaintiff has not done so, summary judgment is granted for Defendants.

## II. Summary Judgment Is Granted for Defendants on the NJLAD Retaliation Claim

The NJLAD prohibits "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act." N.J.S.A. § 10:5-12(d). To prove retaliation under the NJLAD, a plaintiff must show that (1) he engaged in a protected activity, such as opposing an employer's discriminatory practice; (2) he suffered an adverse employment decision; and (3) the former caused the latter. *Battaglia v. United Parcel Serv.*, 70 A.3d 602, 619 (N.J. 2013) (internal citation omitted).

Plaintiff's Brief cites two alleged adverse employment decisions: Plaintiff's letter of reprimand caused by the mistaken belief that he had failed to take a necessary step in performing a job, and his one-day suspension for failure to run an Ethernet cable. (Pl.'s Br. at 10–11.) Assuming that these actions both constitute adverse employment decisions under the second element, under the third prong no facts exist to establish that these actions resulted from Plaintiff's past opposition to Defendants' practices. As stated above, Defendants Barker and Mroz's "weaponiz[ation] of the work rules" and increased use of disciplinary measures was applied to all employees, not just those who had previously attempted to assert rights under the NJLAD. (SOUMF ¶¶ 64–67.) Because no genuine factual dispute exists on this point, summary judgment is granted in favor of Defendants on Plaintiff's retaliation claims.

**III. To the Extent that Plaintiff Asserts Failure to Provide a Reasonable Accommodation, Summary Judgment is Granted for Defendants**

Plaintiff's Brief appears in places to assert discrimination on the basis of Defendants' failure to provide him a reasonable accommodation for his disability. An employer has a duty to provide a reasonable accommodation to an employee with a disability, but this does not mean that an employer has a duty to provide the specific accommodation that an employee requests. *Victor v. State*, 4 A.3d 126, 149–50 (N.J. 2010). Rather, the employer is free to choose any effective accommodation. *Id.* at 150. (internal citation omitted).

In August 2016, Plaintiff requested a light duty assignment that would include "change in tone of voice, allowing [Plaintiff] to speak without interruption, limiting the number of intrusions while on assignment, communicating in a non-confrontational, punitive or interrogatory manner, et cetera." (SOUMF ¶ 24; Vouthas Dep. 150:18–25.) In response to his request, Plaintiff was temporarily assigned to a new location in South Plainfield, New Jersey. This reassignment took

Plaintiff away from Defendant Mroz's supervision, which appears to have been the source of Plaintiff's complaint. (*Id.* 152:13–153:5.) Although the South Plainfield location required a longer commute, Plaintiff's pay and hours were adjusted to account for this change. (SOUMF ¶ 28.) And while it appears that Defendants may have misunderstood the reasons why Plaintiff requested the accommodation that he did (*see* Vouthas Dep. 150:18–151:1, 151:22–152:9 (showing that Plaintiff's request was misunderstood as being based on a physical disability)), nothing in the record shows that this accommodation failed to accomplish what Plaintiff had requested. Because an employee is required to provide only an effective accommodation, not the most desired or most convenient accommodation, Plaintiff cannot successfully allege a failure to accommodate based on this incident.

At another point, Defendant Mroz was Plaintiff's supervisor and Plaintiff requested a different supervisor. (SOUMF ¶ 76c.) Defendant Pierce understood Plaintiff's complaint as stemming from Defendant Mroz's habit of excessively calling Plaintiff. (Pierce Dep. 43:12–44:7.) Defendant Pierce, instead of reassigning Plaintiff as requested, told Defendant Mroz to stop calling Plaintiff. (*Id.*) As above, Defendants provided Plaintiff with an accommodation that effectively addressed his needs, although it was not the specific accommodation Plaintiff requested. This is sufficient under the NJLAD.

Finally, Plaintiff avers generally that Defendant Pierce failed to provide Plaintiff with the accommodations he requested. (Vouthas Dep. 276:21–277:1.) However, Plaintiff provides no additional details, saying only that Defendant Pierce "made absolutely zero effort to accommodate [him]" and "refus[ed] to even recognize that [he] had a disability." (*Id.* 276:21–277:1.) Without more detail about which accommodations Plaintiff needed and were not satisfied, a reasonable jury could not conclude that Defendants failed to provide a reasonable

11

accommodation. For these reasons, summary judgment is appropriate on all accommodation claims.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. An appropriate order will follow.

Date:   1/22/2019                                                         */s/ Anne E. Thompson*
                                                                                    ANNE E. THOMPSON, U.S.D.J.